SARAH E. COOPER,

*vs.*

DELAWARE GENERAL ELECTRIC RAILWAY COMPANY, JOS-
EPH MCDANIEL, JOHN HUNN, HENRY PRATT, THOMAS
C. ROE AND ELWOOD JENKINS.

*Kent, March T.* 1900.

Under the provisions of the General Corporation Law for condemna-
tion of land for a railway, after the survey of its route and loca-
tion has been deposited in the office of the Secretary of State,
there can be no condemnation of any land not shown by such sur-
vey to be included in said route and location.

INJUNCTION BILL.—The complainant was the owner of
a farm and tract of land lying on both sides of the public
road from Dover to Camden. The respondent company was a
corporation created under the provisions of the General Cor-
poration Law, approved March 10, 1899, and had deposited
in the office of the Secretary of State a survey of the route of
the railway which it proposed to construct between Milford,
in Kent County, and a point in Duck Creek Hundred in said
County on the shore of the Delaware Bay at or near Wood-
land Beach. The individual respondents were freeholders ap-
pointed by the Associate Judge, resident in Kent County, to
view the premises and assess the damages which the complain-
ant would sustain by reason of the construction and building
of the railway of the respondent corporation, and they had
notified the complainant that they would meet for that pur-
pose on her lands, on Saturday, March 3, at 10 o'clock A. M.

The bill alleged further that by the survey of the route
and the location of the works, buildings, etc., deposited in the
office of the Secretary of State by the respondent corporation,
it appeared that the route and location of its railway was upon

the public highway, which passed through the lands of the complainant.

One ground of the application was that in and by the General Corporation Law no authority was given to the respondent corporation to locate its railway upon a public highway, except in crossing one, and that it had no power to take for that purpose by condemnation proceedings or otherwise the lands of the complainant included within the limits of the highway.

The bill further alleged, that although what it termed "the pretended survey filed by the said" respondent corporation was located in the public road, she "is informed, believes and avers that the said 'Delaware General Electric Railway Company' proposes and intends to construct its said railway upon lands of the complainant not included within the limits of the said public highway, and by a route entirely different from that covered by the said pretended survey, without any authority of law to so do, and contrary to the statute of the State of Delaware in that behalf, and that the said defendants, unless restrained by the injunction of this Honorable Court, will go upon the lands of the said complainant not included in the said pretended survey for the purpose of condemning the same for the uses of the said railway company, the defendant, and when so condemned that the said railway company, without authority of law, intends to construct, operate and maintain a line of railway over the lands and premises of the complainant without authority of law so to do, to the irreparable injury and damage of the complainant."

The bill prayed for an injunction to restrain the individual respondents as freeholders from going upon the lands of the complainant and assessing damages, and the respondent corporation from going upon the lands of the complainant for the purpose of constructing and operating its line of railway thereon.

The bill was filed March 3, 1900, and thereupon a rule to show cause why a preliminary injunction should not issue was granted, with an order returnable on Wednesday, March 7, 1900, at 10 o'clock, A. M., restraining the defendant com-

pany "from going upon the lands of the complainant not included in their survey, for the purpose of constructing and operating its line of railway thereon, until the further order of the Chancellor."

The complainant filed her own affidavit in support of the bill. It alleged that the respondent corporation proposed and threatened to take by condemnation proceedings the strip of land in front of her property adjoining the westerly side of the public road; that the construction of the railway would be ruinous to her and to the premises; and further that after the alleged survey had been filed with the Secretary of State the respondent made application to the Levy Court to use the public roads. Annexed to the affidavit was a transcript of the resolution of the Levy Court purporting to authorize such use of the public road; and that the only survey and the only route designated did not pass over or upon any portion of her lands outside of the public road; she also deposed that persons representing the respondent corporation made an effort to procure from her the right to construct the railway over her premises, which she refused, and that up to that time no survey had been made of her lands and premises, or of the route of the said railway over the same, and no portion of the road had been theretofore staked out.

There were also affidavits of the president, and some engineers who had worked on the survey, of the Delaware Electric Railway Company, a corporation which had previously made surveys for a railway between the same *termum* as those which would be connected by respondent's line. The affidavits were to the effect that the Delaware Electric Railway Company had never contemplated running its line otherwise than over the public roads, that the survey filed by respondent was a copy of the survey which had been made for the Delaware Electric Railway Company, and that it indicated a route running along the public road where the same passed near the property of complainant, and that the line indicated on the survey so filed did not touch the property of complainant, except as it would pass over the public road through the same.

The resolutions of the Levy Court of Kent County, which were in evidence, annexed to the complainant's affidavit, conferred upon the respondent company the right to lay its tracks and to propel its railway cars over the streets and highways of Kent County according to the terms of its charter, and prescribed certain conditions under which the said authority was to be exercised.

The original resolutions were passed August 31, 1899, and a further resolution was passed February 21, 1900, revoking a right of way over the public road theretofore granted to the Dover and Bayshore Railway Company, and confirming the right of way theretofore granted to the Delaware General Electric Railway Company over the same public road; and also the rights theretofore granted to the last named company over the public road from Dover to Milford in the resolution passed August 31, 1899.

*Anthony Higgins* and *William S. Hilles*, for the complainant.

Under the General Corporation Act lands not belonging to the railway company may not be entered upon without the consent of the owner, except for the purpose of exploring, surveying, levelling and laying out the route, and, having determined upon the route after such survey, it is necessary to file with the Secretary of State a survey of it before there can be any claim by the railway to the use of the land, even for the purpose of condemnation. *Morris, &c. Co. vs. Central R. R. Co. of N. J.*, 16 *N. J. Eq.* 419; *Bonaparte vs. Camden & A. R. R. Co., Baldw.* 205; *Meriam vs. Brown*, 128 *Mass.* 391.

The purpose of the act seems to have been to give the railway company the utmost latitude in selecting its route, but when that was done and the certificate filed of the location so determined, such location became part of its charter, and to that extent the measure of its powers. Such has been the determination under statutes similar to our own. *Vail vs. Morris, &c. R. R. Co.*, 21 *N. J. L.* 189; *United, &c. Co. vs. National Dock, &c. Co.*, 52 *N. J. L.* 90; *National Dock Co. vs. United &c. Co.* 52 *N. J. Eq.* 366; *Strang vs. Beloit & Madison R. R. Co.*, 16 *Wis.* 635; *People vs. Albany & Vermont R. R.*

Co., 24 N. Y. 261; Rochester &c. R. R. Co. vs. N. Y. &c. R. R. Co. 110 N. Y. 128, 35 Am. & Eng. R. Cas. 267; Buffalo &c. R. R. Co. vs. Pottle, 23 Barb 21; Boston &c. R. R. Corp. vs. Midland R. R. Co., 1 Gray 340; Elliott on Railroads sec. 926; Wood on Railroads pp. 1100, 1106 to 1114.

It has likewise been uniformly held that the reason of the law required that a survey should set forth with sufficient particularity to enable a land owner affected thereby to know the amount of his land to be taken, the distances, courses and width of the proposed land. N. Y. &c. R. R. Co. vs. New York &c. R. R. Co., 11 Abb. N. C. 386; N. Y. &Albany R. R. Co. vs. New York &c. R. R. Co., 52 Conn. 274, 25 Am. & Eng. R. Cas. 215; Housatonic R. R. Co. vs. Lee &c. R. R. Co. 118 Mass. 391; Elliott on Railroads, sec. 926; Wood on Railroads pp. 1111 to 1114.

The survey filed does not touch the lands which it is believed the respondent corporation seeks to take. The condemnation proceedings do not disclose what land is sought to be taken, and there has been no compliance with the reasonable requirements of the statute.

In order that a railway company may exercise the right of eminent domain, it must show a clear and plain legislative grant of authority and must have complied with all the conditions. This doctrine has been uniformly recognized in this State. Wilson vs. Balto. & Phila. R. R. Co., 5 Del. Ch. 524; Fulton vs. Town of Dover, 6 Del. Ch. 1; Williamson vs. Gordon Heights Ry. Co., ante 192, 40 Atl. 933; Mills, Em. Dom. sec. 48.

The same cases sustain the doctrine that the remedy of the land owner is in equity and by injunction. 6 Thomp., Corp. sec. 7772.

Such an injunction should issue in any event regardless of the question of the filing of a new and additional survey, and such survey cannot now be filed so as to affect the rights of the complainant. Experimental surveys may be made and discretion exercised as to the location of the line, but after the location is filed, unless the statute expressly confers the power to do so, the right of election is gone. Elliott on Railroads sec. 930.

*Robert C. White*, for the respondents.

THE CHANCELLOR was of opinion that it was manifest that under the General Corporation Law, after a survey had been filed, the railway corporation had power under the Act, to condemn lands for its line over the route and location thereon indicated and over no other; and therefore, as it appeared from the affidavits filed in support of the allegations of the bill, that the lands which the respondents were proceeding to condemn, were not included in the survey filed in the office of the Secretary of State, a preliminary injunction must be granted to restrain the respondents from condemning any lands not included in that survey. This point being decisive of the argument upon the rule, the Chancellor held it was unnecessary to consider the point made in the bill that the General Corporation Law gave no authority to locate its railway upon a public road.

No order for a preliminary injunction was in fact issued, as, after the Chancellor's decision that it should be issued, an agreement was reached between the parties for the sale and conveyance of the land, to restrain the condemnation of which the suit had been instituted, and thereupon, on April 5, 1900, as a result of this agreement, a decree was entered by consent of counsel on both sides that the bill should be dismissed and that the respondents should pay the costs.